NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0011n.06

Case No. 25-3228

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 07, 2026
KELLY L. STEPHENS, Clerk

LORNA VINSANT,

    Plaintiff-Appellant,

v.

WNB GROUP LLC; JAY WALLIS,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

OPINION

Before: McKEAGUE, GRIFFIN, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. Lorna Vinsant claims that the CEO of her former employer sexually harassed her. So she sued the company for creating a hostile work environment and retaliating against her. But the district court granted summary judgment in favor of her employer on both claims. That's because Vinsant didn't establish the harassment was severe or pervasive enough to create a hostile work environment. Nor did she establish a causal connection between her complaints about the alleged harassment and her termination from the company. Finding no error, we affirm.

I.

In 2011, Lorna Vinsant began working for WNB Group LLC (WNB), where she prepared invoices for customers and collected the money that came in from those invoices. Vinsant claims that WNB's CEO, Jay Wallis, sexually harassed her by making comments about her appearance.

But she can't remember any specific comments that he made or how frequently he made them. Vinsant also acknowledges that Wallis never touched her, asked her out, or propositioned her during this time.

Even though Wallis allegedly made inappropriate comments, Vinsant remained at WNB for five years. Then, in 2016, she left to work for the City of Cincinnati because she wanted "[a] new challenge" and because Wallis was a "demanding" boss. R. 39, Pg. ID 593. According to Vinsant, she left WNB on "good terms" and with "no hard feelings" between her and Wallis. *Id.* at 597.

A year later, Vinsant returned to work for WNB and was promoted to the position of Controller. That position came with a raise of approximately $20,000 compared to her previous role at WNB, even though she was doing essentially the same work. Despite the previous alleged harassment, Vinsant expressed no reluctance about returning to WNB. Indeed, she didn't apply to any other jobs.

But soon after Vinsant rejoined WNB, she claims Wallis began making comments about her appearance again. For example, he told customers and vendors, "I like walking behind [Vinsant] so I can look at her ass. I like my view from looking at her ass." *Id.* at 650–51. Wallis also remarked that he liked when Vinsant had to work on computer equipment underneath a desk because he could look at her backside. Vinsant estimated that Wallis made these inappropriate comments between 10 and 100 times during her employment. She repeatedly told him to stop commenting on her appearance, but he "just laugh[ed]" in response. *Id.* at 667.

During this time, Vinsant received a salary increase, bringing her total compensation up to $125,000. But then in September 2019, Wallis asked Vinsant to help with the Local Sales Department. The next month, WNB changed Vinsant's title to "Local Sales Manager" and

lowered her base compensation to $62,500. Vinsant would also receive eight percent of all sales over $900,000. However, local sales from January to September 2019 were only about $466,000, so Vinsant doubted that she could make the remaining $434,000 of sales to qualify for the commission.

Because these changes slashed her salary, Vinsant retained an attorney. The attorney then emailed a letter to Wallis, asking him to explain why he moved Vinsant to the Local Sales Department and reduced her salary. That evening, Wallis informed Vinsant that she shouldn't come to work the next day because he was placing her on involuntary paid administrative leave. Vinsant then began discussing a settlement with WNB and Wallis (the Defendants). According to the Defendants, on December 19, 2019, their lawyer informed Vinsant that WNB would no longer pay her unless she returned to work. Vinsant didn't return to work, so WNB terminated her.

As a result, Vinsant sued WNB and Wallis in the Southern District of Ohio, invoking the court's diversity jurisdiction. She principally alleged that the Defendants created a hostile work environment, wrongfully terminated her, and retaliated against her, all in violation of Ohio state law. After discovery, the Defendants moved for summary judgment. The district court granted summary judgment in favor of the Defendants on the hostile-work-environment and retaliation claims but denied their motion on the wrongful-termination claim. The wrongful-termination claim proceeded to trial, and a jury found for the Defendants. Vinsant timely appealed.

## II.

On appeal, Vinsant challenges only the district court's grant of summary judgment on the hostile-work-environment and retaliation claims. We review the grant of summary judgment de novo, construing the facts in the light most favorable to Vinsant. *Goldblum v. Univ. of Cincinnati*, 62 F.4th 244, 251 (6th Cir. 2023). A party may prevail on a motion for summary judgment only

if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A.

Start with the hostile-work-environment claim. To establish a hostile work environment under Ohio law, a plaintiff must show that the harassment was (1) unwelcome; (2) based on sex; (3) sufficiently severe or pervasive to affect the terms, conditions, or privileges of employment; and (4) either committed by a supervisor, known to the employer, or should've been known to the employer, who then failed to take appropriate corrective action.[1] *Hampel v. Food Ingredients Specialties, Inc.*, 729 N.E.2d 726, 732–33 (Ohio 2000).

Only the third prong is at issue here. To be severe or pervasive, the harassment "must be both objectively and subjectively offensive," meaning that a reasonable person would find it hostile or abusive and the victim did in fact perceive it to be so. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). Several factors govern whether conduct clears this "high bar," such as the conduct's frequency, severity, threatening or humiliating nature, and interference with the employee's work. *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 485–86 (6th Cir. 2020).

The district court correctly concluded that Vinsant hasn't met the "high bar" required to establish severe or pervasive harassment. She relies exclusively on Wallis's alleged remarks about her appearance.[2] But the fact that words have "sexual content or connotations" isn't enough to create a hostile work environment. *Knox v. Neaton Auto Prods. Mfg., Inc.*, 375 F.3d 451, 459 (6th

---

[1] The Ohio Supreme Court has held that federal decisions interpreting Title VII of the Civil Rights Act of 1964 also apply to Ohio discrimination law, so we rely on both state and federal caselaw. *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio C.R. Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981).

[2] Vinsant also alleges that after she asked Wallis for a loan from WNB, Wallis commented to another WNB executive that "he wondered how many [sexual favors] from Vinsant [that would] merit." R. 41, Pg. ID 930. But Vinsant never alleges that she "was aware" of this comment "at the time" of her employment, so it can't support her hostile-work-environment claim. *Burnett v. Tyco Corp.*, 203 F.3d 980, 981 (6th Cir. 2000) (quotation omitted).

Cir. 2004). Rather, "the workplace must be permeated with discriminatory intimidation, ridicule[,] or insult sufficiently severe or pervasive to alter the conditions of employment." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 333 (6th Cir. 2008) (quotation omitted).

As Vinsant acknowledges, Wallis never touched her inappropriately, never propositioned her, never attempted to initiate a sexual relationship, and never asked her out. While inappropriate, Wallis's alleged comments pale in comparison to other cases where more invasive, aggressive, and sexual conduct still wasn't sufficient to establish a hostile work environment. *See, e.g.*, *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 351–52 (6th Cir. 2005) (finding no hostile work environment where a supervisor placed a vibrating pager on an employee's thigh, pulled at her overalls, and told vulgar jokes); *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 790 (6th Cir. 2000) (finding no hostile work environment when a supervisor made sexual advances related to an employee's job evaluation, commented on her dress, and made vulgar jokes); *see also Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 568–71 (6th Cir. 2021) (collecting cases). And even when comments were sufficient to establish a hostile work environment, the plaintiff alleged that the harassment occurred on a more frequent, ongoing basis. *See, e.g.*, *Howington v. Quality Rest. Concepts, LLC*, 298 F. App'x 436, 445 (6th Cir. 2008). Indeed, in *Howington*, the manager asked an employee to have sex with him "every day that Plaintiff worked with him." *Id.* That frequency far surpasses the allegations here, where Vinsant made vague claims that the inappropriate comments about her appearance happened between 10 and 100 times over a 2.5-year period.

Because Vinsant didn't establish severe or pervasive harassment, her hostile-work-environment claim fails as a matter of law. So the district court properly granted summary judgment to the Defendants on this claim.

B.

Vinsant's retaliation claim doesn't fare any better. Ohio law prohibits retaliation against any person who "has opposed any unlawful discriminatory practice" or "has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing." Ohio Rev. Code Ann. § 4112.02(I). To establish retaliation, a plaintiff must show (1) "she engaged in a protected activity," (2) the defendant was aware the plaintiff had engaged in that activity, (3) the defendant took adverse action against the plaintiff, and (4) "there is a causal connection between the protected activity and adverse action." *Greer-Burger v. Temesi*, 879 N.E.2d 174, 180 (Ohio 2007).

The parties agree that Vinsant established each of the first three elements of a retaliation claim. She engaged in protected activity by complaining to Wallis about his inappropriate comments. *See Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (noting that "complaints to management and less formal protests of discriminatory employment practices" are protected activity). The Defendants were aware of Vinsant's complaints because she told Wallis that she objected to his comments. And the Defendants took adverse action against her by demoting her, reducing her pay, and ultimately terminating her.

But Vinsant can't establish a causal connection between her protected activity and the adverse action. She primarily relies on the closeness in time between some of her complaints and the adverse action. Such closeness in time could possibly constitute evidence of causation under certain circumstances. *See Nguyen v. City of Cleveland*, 229 F.3d 559, 566–67 (6th Cir. 2000). But if "some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other

evidence of retaliatory conduct." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).

As Vinsant admits, she repeatedly complained about Wallis's inappropriate comments throughout her two periods of employment, but WNB didn't take any adverse action against her. In fact, Wallis's only reaction to her complaints was to laugh. It was not until September 2019 that WNB took any action against Vinsant, when Wallis reassigned her to the Local Sales Department. Because Vinsant repeatedly complained about Wallis's comments for years before WNB took any adverse action, temporal proximity simply isn't enough to establish causation. Rather, Vinsant must offer other evidence of retaliatory conduct. *See id.* But she hasn't done so.

Vinsant also alleges that Wallis retaliated against her by sexually harassing her. But this theory fails for the same reason. As Vinsant acknowledges, Wallis's alleged harassment occurred throughout her entire employment at WNB. So the temporal proximity between her complaints and the alleged harassment isn't sufficient to establish causation. Instead, Vinsant simply speculates that Wallis harassed her in retaliation for her complaints. And "[w]ithout more, that speculation is insufficient to survive summary judgment." *Doe v. City of Detroit*, 3 F.4th 294, 305 (6th Cir. 2021).

In short, Vinsant has failed to establish a prima facie case of retaliation, so the district court didn't err in granting summary judgment to the Defendants on this claim too.

\*      \*      \*

We affirm.